IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION



06/09/2022

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Francisco Lopez | § | Case No. 21-10343 |
| Ana Yansy Lopez | § | |
| | § | |
| Debtors | § | Chapter 13 |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Francisco Lopez | § | Case No. 21-10098 |
| | § | |
| Debtor | § | Chapter 13 |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Ana Yansy Lopez | § | Case No. 21-10246 |
| | § | |
| Debtor | § | Chapter 13 |

**MEMORANDUM OF DECISION AND ORDER HOLDING
ATTORNEY PAUL C. (PAT) MURPHY IV IN CIVIL CONTEMPT**

The Court is faced with the task of considering enforcement of one of its own

orders. The responsibility of ruling on this matter is not taken lightly, nor is the

importance of obedience to Court orders. The Fifth Circuit recently stated the following

in an unpublished decision:

> "When litigating in federal district court, it is often advisable to read the court's
> orders. They are not merely 'the breath of an unfee'd lawyer,' and an attorney who
> treats them as such does so at his own peril. Should an attorney misstep, the best
> course of action is to take responsibility for the mistake and try to move forward."

*Scott v. MEI, Inc.*, No. 21-10680, 2022 WL 1055576, at *1 (5th Cir. Apr. 8, 2022) (per

curiam).  This ruling exemplifies what happens when an attorney does not take

responsibility for a failure to follow the dictates of a federal court order.

### I.  Factual Background

Debtor, Francisco Lopez, filed Case No. 21-10098 on March 31, 2021 (the "First

Case").  Attorney Paul C. (Pat) Murphy IV filed the case.[1]  Following multiple failures to

comply with this Court's procedures, the First Case was dismissed with prejudice on June

28, 2021.[2]  Mr. Murphy filed a motion to reinstate the First Case and requested an

emergency hearing,[3] but emergency consideration of that motion was denied, as was

ultimately the motion itself.[4]

Prior to resolution of the motion to reinstate in the First Case, Debtor, Ana Y.

Lopez, filed Case No. 21-10246 on August 3, 2021 (the "Second Case").  Ana Y. Lopez

is married to Francisco Lopez.  Mr. Murphy also filed the Second Case on behalf of Mrs.

Lopez.[5]  Unfortunately for Mrs. Lopez, the Second Case was no more successful than the

First Case, and was dismissed without prejudice on November 16, 2021 because of

---

[1] First Case, Petition, ECF No. 1.

[2] First Case, Dismissal Order, ECF No. 52.

[3] First Case, Expedited Mot. Reinstate, ECF No. 54; Mot. Emergency Hearing, ECF No. 80.

[4] First Case, Order Denying in Part & Granting in Part Debtor's Expedited Mot. Reinstate, ECF No. 95.

[5] Second Case, Petition, ECF No. 1.

Debtor's failure to comply with the pre-petition credit counseling requirement.[6]

In both the First Case and Second Case, the United States Trustee (the "UST") filed identical "First Amended Motion(s) for Order to Show Cause as to Why Sanctions Should Not Issue - and Fees Be Examined - as to Debtors' Counsel Paul C. (Pat) Murphy IV."[7] The UST cited several authorities explaining its role and participation in both cases, including 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3). The UST alleged various failings by Paul C. (Pat) Murphy IV in his representation of Mr. Lopez and Mrs. Lopez in their respective bankruptcy cases, and sought sanctions, including disgorgement of fees. The failings alleged by the UST included the following:

1. "Murphy did not have sufficient experience or competence in filing either Chapter 13 Case. He should not have filed either Case. Murphy was unable to properly prosecute either Case, both of which contained significant errors and deficiencies."[8]

2. "Murphy failed to keep his client reasonably informed about significant matters affecting his legal rights and the status of his bankruptcy case."[9]

3. "Murphy failed to communicate to the client the basis or rate of the fee and had no written fee agreement."[10]

---

[6] Second Case, Order Denying Debtor's Mot. Allow Late Filed Credit Counseling Certificate, ECF No. 56.

[7] Second Case, UST Fir. Am. Mot. Sanctions, ECF No. 28; First Case, UST Fir. Am. Mot. Sanctions, ECF No. 93.

[8] Second Case, UST Fir. Am. Mot. Sanctions, 4, ¶ 7, ECF No. 28.

[9] *Id*. at 5 ¶ 12.

[10] *Id*. at 6 ¶ 17.

4.      Failure to "enter into an Attorney/Client agreement with Lopez concerning the bankruptcy."[11]

Mr. Murphy disputed these allegations.

After a contested hearing on the United States Trustee's motions, Mr. Murphy and the UST reached an agreement.  The agreement was memorialized in this Court's "Agreed Order Granting, in Part, the U.S. Trustee's First Amended Motion for Order to Show Cause as to Debtor's Counsel (Docket #28 in Ana Lopez; 21-10246) And (Docket #93 in Francisco Lopez; 21-10098)" (the "Agreed Order").  Mr. Murphy signed the Agreed Order, which contained the following provision:

> "Francisco and Ana Lopez shall have the right to formally request ("Request") Murphy to pay up to $8,500 (the "Funds") back to them.  Such formal Request must be typed, and signed by both Frank and Ana Lopez. The Request must be notarized and may be sent to Murphy at his email address below.  Such Request must be submitted by Francisco and Ana Lopez no later than 5 p.m. on Monday, November 15, 2021.  If such Request is timely made, then Murphy shall pay the Funds to the Lopez within 14 days after such Request is made."[12]

Thus, in the event Debtors timely requested the return of fees up to $8,500.00 which they had previously paid to Paul C. (Pat) Murphy IV, Mr. Murphy was required to "pay" such amount to Debtors within fourteen (14) days.

Debtors jointly filed Case No. 21-10343 (the "Third Case") with different

---

[11] *Id*. at 8 ¶ 23. The Court also notes that 11 U.S.C. § 528(a)(1) requires a consumer debtor attorney to enter into a written contract with his or her client prior to the filing of a petition.  Such a written contract must clearly and conspicuously explain in detail the fees to be charged, terms of payment, and services to be rendered.

[12] Second Case, Agreed Order, 2 ¶ 2, ECF No. 57.

representation.[13]  The Third Case has been far more successful than either the First Case

or Second Case.  On January 20, 2022, the Court conducted a hearing to consider

confirmation of the Chapter 13 Plan (the "Plan") the Debtors filed in the Third Case.  At

the confirmation hearing, Debtors informed the Court that following their timely request,

Mr. Murphy had failed to pay the $8,500.00 to Debtors as previously agreed and ordered.

Mr. Lopez testified that Debtors made a written request, and the Court admitted that

written request for payment of the sum of $8,500.00 signed by Debtors, notarized as

required, dated October 28, 2022, and addressed to Mr. Murphy into evidence.[14]  Mr.

Lopez further testified that as of the confirmation hearing, Debtors had not received any

funds from Mr. Murphy.  Instead, Debtors received an invoice dated November 12, 2021

for $17,729.88, less a "Balance Adjustment Payment of Credit relating to Agreed Order"

in the amount of $8,500.00, for a net due of $9,229.88.[15]  Mr. Murphy filed a proof of

claim for that amount on January 7, 2022 in the Third Case prior to the confirmation

hearing.[16]  Mr. Murphy did not appear at the confirmation hearing.

The Court found that, according to the Federal and Local Rules of Bankruptcy

Procedure, there had been appropriate notice of the confirmation hearing, and confirmed

---

[13] Debtors, Francisco Lopez and Ana Y. Lopez, engaged replacement counsel, Tagnia Clark of the Maida Clark Law Firm, PC in Beaumont, Texas for their latest joint filing.

[14] *See* Third Case, Debtors' Ex. List, Ex. 1, ECF No. 19.

[15] *See* Third Case, Murphy's Ex. List, Ex. 10, ECF No. 38; *see also* Third Case, Proof of Claim No. 9.

[16] Third Case, Proof of Claim No. 9.

the Debtors' Plan.  To further consider payment of the $8,500.00, and to give Mr. Murphy

an opportunity to appear and explain his alleged failure to comply with the Agreed Order,

the Court entered an "Order to Show Cause As To Why Paul C. (Pat) Murphy IV Should

Not Be Held In Civil Contempt" (the "Show Cause Order") on February 8, 2022.[17]

      The Show Cause Order required Mr. Murphy to show cause as to why he should

not be held in civil contempt for failure to pay funds in the amount of $8,500.00 to

Debtors in compliance with the Agreed Order.  Further, the Show Cause Order

specifically authorized Mr. Murphy to respond in writing and appear without violating the

terms of the Agreed Order.  The Court scheduled an in-person show cause hearing for

April 20, 2022, and set a deadline prior to that hearing for parties in interest to submit

written arguments or authorities.

      Only Mr. Murphy filed a written response in advance of the April 20, 2022

hearing.  In his response, he argued that the Agreed Order "was obtained by fraud,

collusion, breach of the attorney client privilege and in violation of the Texas Disciplinary

Rules of Professional Conduct."[18]  Neither Debtors nor their counsel in the Third Case

were signatories to the Agreed Order.  Rather, the Agreed Order was submitted by Mr.

Murphy and the UST, and was approved and signed by this Court more than six (6)

months ago.

---

[17] Third Case, Show Cause Order, ECF No. 22.

[18] *See* Third Case, Murphy's Memorandum of Argument and Authorities In Response To Order
To Show Cause as To Why He Should Not Be Held In Civil Contempt, 2 ¶ 2, ECF No. 33.

Mr. Murphy, Chapter 13 Trustee Lloyd Kraus, and Tagnia Clark, Debtors' current bankruptcy counsel, appeared at the show cause hearing on April 20, 2022. The Court repeatedly informed all parties present during the hearing that there were only two fact issues raised by the Show Cause Order: (1) whether the Debtors requested the return of funds as contemplated by the Agreed Order, and (2) whether Paul C. (Pat) Murphy IV paid the sum of $8,500.00 to Debtors. Despite this advisory, Mr. Murphy made numerous allegations during arguments that the Agreed Order was procured by fraud committed by Debtors and the UST.

Mr. Murphy did not testify about his allegations, although he did call Mr. Lopez as a witness. During his direct examination of Mr. Lopez, Mr. Murphy attempted to question him about circumstances prior to entry of the Agreed Order. The Chapter 13 Trustee and Mr. Lopez's attorney both objected to this line of questioning as irrelevant to the fact questions raised by the Show Cause Order. The Court permitted Mr. Murphy some leeway in his questioning of Mr. Lopez in order to allow him an opportunity to elicit testimony and introduce relevant evidence he thought necessary to address the issues presented in the Court's Show Cause Order.[19] Mr. Lopez testified that Debtors

---

[19] Murphy listed nine (9) exhibits and seven (7) witnesses in his original Witness and Exhibit List (Third Case, ECF No. 34). Of those seven (7) witnesses, Mr. Murphy only called Mr. Lopez. Murphy offered his "Attorneys Fee Contract" as Exhibit 1, a letter from Murphy to Debtors regarding the Agreed Order as Exhibit 8, and as an additional unlisted Exhibit 10, the Proof of Claim he filed in the Third Case. Exhibits 8 and 10 were admitted at the April 20, 2022 hearing, and Murphy filed a Supplemental Witness and Exhibit List (Third Case, ECF No. 38), including Exhibit 10 as requested by the Court. The Chapter 13 Trustee objected to admission of Murphy's Exhibit 1, and it was not admitted into evidence. For clarification, the Court previously admitted the written request for payment dated October 28, 2022, signed by Debtors, and addressed to Murphy as a separate Exhibit 1 at the January 20,

made a request for return of $8,500.00 as contemplated by the Agreed Order, and that Mr.

Murphy had not paid any of that sum to the Debtors.  Rather, Mr. Lopez testified that

Debtors received a bill for services with a credit of $8,500.00.[20]  He testified that this was

the first and only such bill that they ever received from Murphy.  Mr. Murphy asked a

number of questions in an attempt to develop evidence that he only signed the Agreed

Order because he believed Mr. Lopez would not request the return of the $8,500.00.  The

Court did not find this evidence or line of inquiry credible.

## II.  Issues Presented

The matter to be determined in this case is not complicated.  Did Paul C. (Pat)

Murphy IV comply with this Court's Agreed Order and "pay" the sum of $8,500.00 to

Debtors as required?  Murphy would have this Court reconsider the Agreed Order and

remove his obligation to pay this sum.  He did not make any such request under Fed. R.

Civ. P. 60(b), however, and the Court sees little reason to consider such relief based upon

the evidence presented.

---

2022 confirmation hearing.  *See* Third Case, Debtors' Ex. List, Ex. 1, ECF No. 19.  No other exhibits
were admitted, but Murphy sought to offer a recording of a telephone conversation between himself and
Mr. Lopez as Exhibit 5 for *in camera* review.  Both the Chapter 13 Trustee and Debtors' counsel
objected to admission of Exhibit 5 and to an *in camera* review.  At the conclusion of the hearing, the
Court gave Murphy, Debtors, and the Chapter 13 Trustee an opportunity to file any briefing they wished
regarding whether this recording should be admitted into evidence or reviewed.  For the reasons set out
in this Memorandum of Decision, the Court declines to admit the offered recording or review it *in
camera.*

[20] Ex. 8 and Ex. 10.

III.  Analysis

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.

The Court has the authority to enter a final judgment in this contested matter because it

constitutes a statutorily core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and

(O), and meets all constitutional standards for the proper exercise of full judicial power

by this Court.  Furthermore, a bankruptcy court "plainly ha[s] jurisdiction to interpret and

enforce its own prior orders."  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)

(citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)).

The law provides several different sources of authority upon which a bankruptcy

court may rely when it must enforce its orders.  One such source of authority is 28 U.S.C.

§ 1927.[21]  Courts are split, however, over whether a bankruptcy court is a "court of the

United States" for the purpose of 28 U.S.C. § 1927.[22]  Fed. R. Bank. P. 9011 is another

source of authority, as long as its notice requirements and process are followed.  Finally,

---

[21] "Any attorney or other person admitted to conduct cases in any court of the United States or
any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be
required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably
incurred because of such conduct."  28 U.S.C. § 1927.

[22] Some cases consider that as a unit of the district court, which is a "court of the United States,"
a bankruptcy court has the authority to award sanctions under 28 U.S.C. § 1927.  *See e.g.*, *In re Schaefer
Salt Recovery, Inc.*, 542 F.3d 90, 103–105 (3rd Cir. 2008); *see also In re Osborne*, 375 B.R. 216, 220
(Bankr. M.D. La. 2007).  Other courts have held that 28 U.S.C. § 451 defines the term "court of the
United States" as "the Supreme Court of the United States, courts of appeals, district courts...," a
definition which does not include bankruptcy courts.  *See Jones v. Bank of Santa Fe (In re Courtesy Inns,
Ltd., Inc.*), 40 F.3d 1084, 1086 (10th Cir. 1994).  This Court does not rely upon 28 U.S.C. § 1927 and
thus makes no ruling on its applicability to this case.

the Court has inherent authority to impose sanctions for engaging in bad faith conduct.[23]

In this case, the Court relies on its civil contempt power under 11 U.S.C. § 105.[24] The Fifth Circuit has stated that "a bankruptcy court's power to conduct civil contempt proceedings and issue orders in accordance with the outcome of those proceedings lies in 11 U.S.C. § 105." *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (Matter of Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997). Furthermore, "the language of [§ 105] is unambiguous. Reading it under its plain meaning, we conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code." *Id*. An exercise of this civil contempt power should be designed either "to coerce compliance with a court order or to compensate another party for the contemnor's violation" rather than to "punish the party whose conduct is in question or to vindicate the authority of the court."[25] *Id*. at 612.

---

[23] "It is well-settled that a federal court, acting under its inherent authority, may impose sanctions against litigants or lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad faith conduct." *Knight v. Luedtke (In re Yorkshire*, *LLC)*, 540 F.3d 328, 332 (5th Cir. 2008). Sanctions based upon inherent authority are upheld "only if (1) the bankruptcy court finds that the party acted in bad faith or willfully abused the judicial process and (2) its finding is supported by clear and convincing evidence." *Kreit v. Quinn (In re Cleveland Imaging & Surgical Hosp., L.L.C.*), 26 F.4th 285, 292 (5th Cir. 2022).

[24] This section provides in pertinent part:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

[25] "A bankruptcy court's authority under § 105 to enforce its own orders cannot be reasonably questioned. *Am. Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two

In considering the exercise of civil contempt power under 11 U.S.C. § 105, the

Court must determine by clear and convincing evidence that: (1) the Agreed Order was in

effect; (2) the Agreed Order required certain conduct by attorney Paul C. (Pat) Murphy

IV; and (3) attorney Paul C. (Pat) Murphy IV failed to comply with the Agreed Order.

*Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 400 (5th Cir. 1987).

"Evidence is clear and convincing if it produces in the mind of the trier of fact a firm

belief . . . so clear, direct and weighty and convincing as to enable the fact finder to come

to a clear conviction, without hesitancy, of the truth of precise facts of the case." *Waste*

*Mgmt. of Wash. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015) (quoting *Shafer v. Army &*

*Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004)). "The contemptuous actions

need not be willful so long as the contemnor actually failed to comply with the court's

order." *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000).

Furthermore, the Court "is entitled to a degree of flexibility in vindicating its authority

against actions that, while not expressly prohibited, nonetheless violate the reasonably

understood terms of the order." *Hornbeck Offshore Services, L.L.C. v. Salazar*, 713 F.3d

787, 792 (5th Cir. 2013).

After a court determines that the exercise of civil contempt power under 11 U.S.C.

§ 105 is warranted, the burden shifts to the contemnor to demonstrate inability to comply

---

purposes: to coerce the defendant into compliance with the court's order, and to compensate the
complainant for losses sustained.")." (quoting *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 303–04
(1947). *Rodriguez v. Countrywide Home Loans Inc. (In re Rodriguez)*, 396 B.R. 436, 459 (Bankr. S.D.
Tex. 2008).

if inability is alleged.  *See United States v. Rylander*, 460 U.S. 752, 757 (1983); *see also*

*United States v. Sorrells*, 877 F.2d 346, 348–49 (5th Cir. 1989).  Inability to comply,

however, is not the same as an unwillingness to comply.  The Supreme Court reiterated

this fundamental distinction in *Rylander*:

> "It would be a disservice to the law if we were to depart from the long-standing
> rule that a contempt proceeding does not open to reconsideration the legal or
> factual basis of the order alleged to have been disobeyed and thus become a retrial
> of the original controversy.  The procedure to enforce a court's order commanding
> or forbidding an act should not be so inconclusive as to foster experimentation
> with disobedience."

*Rylander*, 460 U.S. at 756–57 (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)).  A

contemnor can also defend against such allegations by establishing substantial

compliance with the terms of a court's order.  *U.S. Steel Corp. v. UMW*, 598 F.2d 363,

368 (5th Cir. 1979).  Good faith and a reasonable interpretation of a court's order are not

defenses to civil contempt.  *United States v. City of Jackson*, 359 F.3d 727, 735 (5th Cir.

2004)

Upon a bankruptcy court's determination that the exercise of its civil contempt

power under 11 U.S.C. § 105 is appropriate, and in the absence of a contemnor's

successful defense, a court should next consider four (4) factors to determine what

sanction may be appropriate.  "[T]he factors to be considered in imposing civil contempt

sanctions are:  (1) the harm from noncompliance; (2) the probable effectiveness of the

sanction; (3) the financial resources of the contemnor and the burden the sanctions may

impose; and (4) the willfulness of the contemnor in disregarding the court's order."

-12-

*Lamar Financial Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990). A court should impose the least coercive sanction reasonably calculated to achieve compliance with its order. *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 68 (5th Cir. 1996).

It is against this legal background that the Court weighs the evidence presented. First, the Court finds by clear and convincing evidence that the Agreed Order was in effect and was a final order. As evidenced by his signature, Mr. Murphy agreed to the terms of the Agreed Order and did not file any appeal notice regarding the Agreed Order. During the show cause hearing on April 20, 2022, Mr. Murphy made numerous fraud allegations concerning the circumstances surrounding his consent to the Agreed Order. The Court did not find these allegations credible based upon the evidence presented.

It is possible, if warranted, for this Court to reconsider the Agreed Order. Bankruptcy court rulings, however, "are not intended as mere first drafts, subject to revision and reconsideration by the agreement of the litigants." *In re Washington*, No. 03-43611, 2007 Bankr. LEXIS 3891, at *3-4 (Bankr. E.D. Tex. 2007). There is no agreement here by the litigants for reconsideration, and Mr. Murphy has not filed a motion seeking relief pursuant to either Fed. R. Civ P. 59 or 60[26]. Such a motion, if filed, would be decided pursuant to either Fed. R. Civ. P. 59(e) or 60(b) based upon the time of its filing. *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir. 1991). More than

---

[26] Fed. R. Civ. P. 59 is applicable pursuant to Fed. R. Bankr. P. 9023. Fed. R. Civ. P. 60 is applicable pursuant to Fed. R. Bankr. P. 9024.

fourteen (14) days have passed since the entry of the Agreed Order, and so a request by

Mr. Murphy to reconsider the Agreed Order would be evaluated under Fed. R. Civ. P.

60(b).  By granting such a motion under that rule, the Court could retract a final

judgment, order, or proceeding for the following reasons:

> "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered
> evidence that, with reasonable diligence, could not have been discovered in time to
> move for a new trial under Rule 59(b); (3) fraud (whether previously called
> intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4)
> the judgment is void; (5) the judgment has been satisfied, released, or discharged;
> it is based on an earlier judgment that has been reversed or vacated; or applying it
> prospectively is no longer equitable; or (6) any other reason that justifies relief."

Fed. R. Civ. P. 60(b). Mr. Murphy alleged fraud in the written response he filed in

advance of the April 20, 2022 show cause hearing, and in his arguments at that hearing.

There are two kinds of fraud under Fed. R. Civ. P. 60.  Under Fed. R. Civ. P.

60(b)(3), a litigant must prove fraud by clear and convincing evidence.  *Rozier v. Ford*

*Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).  "The conduct complained of must be

such as prevented the losing party from fully and fairly presenting his case or defense."

*Id.*  "This subsection of [Rule 60] is aimed at judgments which were unfairly obtained,

not at those which are factually incorrect."  *See Rozier*, 573 F.2d at 1339*; see also*

*Optimal Health Care Services, Inc. v. Travelers Ins. Co.*, 801 F. Supp. 1558, 1561 (E.D.

Tex. 1992).  Alternatively, under Fed. R. Civ. P. 60(d)(3), the Court's power to "set aside

a judgment for fraud on the court" is limited, such that there must be "fraud (1) that

attempts or succeeds in defiling the court or (2) that is perpetrated by officers of the court

and prohibits the court from performing the impartial task of judging cases." *First Nat.*

*Bank of Louisville v. Lustig*, 832 F. Supp. 1058, 1062 (E.D. La. 1993), *aff'd*, 96 F.3d 1554

(5th Cir. 1996). "Relief based upon this kind of fraud is reserved for the most egregious

misconduct and requires a showing of an unconscionable scheme designed to improperly

influence the court." *Id*. Based upon the evidence presented, and in the absence of a

motion by Mr. Murphy, the Court does not find his allegation of fraud either credible or

sufficient to warrant relief from the Agreed Order pursuant to either Fed. R. Civ. P. 60(b)

or 60(d)(3).

The Court also finds by clear and convincing evidence that the Agreed Order

required certain conduct by attorney Paul C. (Pat) Murphy IV. Specifically, the Agreed

Order required that if Debtors timely requested return of fees they paid to Mr. Murphy up

to $8,500.00, then Mr. Murphy was required to "pay" such amount to Debtors within

fourteen (14) days. Debtors' written request, which complied with the Agreed Order, was

admitted into evidence.[27] Mr. Murphy acknowledged receipt of the request by providing a

"Balance Adjustment Payment of Credit relating to Agreed Order" in the amount of

$8,500.00.[28] At the April 20, 2022 hearing, Mr. Murphy disputed what he was required to

do by the Court's directive that he "pay" such amount to Debtors within fourteen (14)

---

[27] *See* Third Case, Debtors' Ex. List, Ex. 1, ECF No. 19.

[28] *See* Third Case, Murphy's Ex. List, Ex. 10, ECF No. 38; *see also* Third Case, Proof of Claim No. 9.

**-15-**

days.[29]  Mr. Murphy argued that his "credit" complied with this Court's directive.

There is a difference between the meaning of the words "pay" and "credit."  Black's Law Dictionary defines "pay" as "the act of paying or being paid."  *Pay*, *Black's Law Dictionary* (11th ed. 2019).  This concept involves the immediate transfer of an amount of value in some form from one person or entity to another.  One "pays" a debt owed by cash, check, bank debit, wire transfer, or even in kind.  In comparison, Black's Law Dictionary defines "credit" as "one's ability to borrow money," or "the time that a seller gives the buyer to make the payment that is due."  *Credit*, *Black's Law Dictionary* (11th ed. 2019).  Merriam-Webster defines "credit" as "the provision of money, goods, or services with the expectation of future payment."[30]  The Court finds the latter definition most instructive.  As used in the Agreed Order, the term "pay" contemplated and required a transfer of value from Mr. Murphy to Debtors up to $8,500.00 upon request.  There was no expectation of future payment, either express or implied, in the Agreed Order.  This was intentional on the Court's part.  The Agreed Order was intended to and did resolve the question of Mr. Murphy's sanctionable conduct as alleged by the UST.  The payment Mr. Murphy agreed to make to the Debtors satisfactorily remedied the allegations of the UST.  A credit against an unsecured proof of claim asserted in a subsequent Chapter 13 case does not satisfactorily

---

[29] Murphy also appears to raise this issue in his response to this Court's Show Cause Order by stating that "[w]hen interpreting a consent decree, general principles of contract interpretation govern." Third Case, Murphy's Memorandum of Argument and Authorities In Response to Show Cause Order, 2 ¶2, ECF No. 33. This Court does not view its directive in the Agreed Order as ambiguous in any way.

[30] *Credit*, https://www.merriam-webster.com/dictionary/credit (last visited May 18, 2022).

**-16-**

remedy those allegations.[31]  A "credit" can of course be used as a *method of payment*, such as the use of a credit card to pay for groceries.  The cardholder is, after card use, expected to "pay" the credit card bill when it comes due.  Thus, the merchant where the card was used is paid, but the credit card issuer is not paid at the time of card use.  Instead, the card issuer extends credit to the cardholder which it expects to be paid.  With respect to the Agreed Order, the obligation to pay ran only from Mr. Murphy to the Debtors.

The last element of a civil contempt finding, whether Mr. Murphy failed to comply with the Agreed Order, is simple.  The Court finds by clear and convincing evidence that attorney Paul C. (Pat) Murphy IV failed to "pay" $8,500.00 to Debtors within the requisite fourteen (14) days after their timely request.  The "Balance Adjustment Payment of Credit relating to Agreed Order" does not comply with this Court's Agreed Order.  Rather, Mr. Murphy was required to transfer, by some form of payment, value to the Debtors in the amount of $8,500.00.  This he unequivocally has not done.  Therefore, the Court finds attorney Paul C. (Pat) Murphy IV in civil contempt of the Agreed Order pursuant to 11 U.S.C. § 105.

Mr. Murphy had the burden to establish either an inability to comply with the Agreed Order, or his substantial compliance with the Agreed Order as possible defenses.  Mr. Murphy did not present any evidence of an inability to comply with the Agreed Order,

---

[31] The Court here notes that it does not make any finding regarding the validity of Murphy's proof of claim filed in the Third Case, a question that is not properly before the Court in this contested matter.  Only the propriety of Murphy's conduct in the context of the Agreed Order is considered and determined in this Memorandum of Decision and Order.

making that possible defense inapplicable.  Regarding substantial compliance, Mr. Murphy

argued that the provision of a credit in the amount of $8,500.00 satisfied the requirement

that he "pay" that sum to Debtors.  This mincing of words is not persuasive, and the Court

finds that Murphy failed to carry his burden on the possible substantial compliance defense.

## V.  *In Camera* Evidence

After Mr. Lopez's testimony at the April 20, 2022 show cause hearing, Mr. Murphy

sought to offer a recorded telephone conversation between himself and Mr. Lopez for the

Court's *in camera* review.[32]  The Chapter 13 Trustee and Debtors' counsel objected to such

a review and the admission of the purported recording for failure to properly authenticate

pursuant to Fed. R. Evid. 901.

Mr. Murphy sought an *in camera* review because the recorded conversation was

allegedly protected by attorney-client privilege.  Mr. Lopez, however, was present in the

courtroom, testified under oath, and answered all questions propounded by Mr. Murphy.

The Court was therefore skeptical of the propriety of reviewing a recorded conversation *in

camera* between Mr. Lopez and Mr. Murphy.  Because of the importance of fully

developing admissible evidence in a show cause hearing, the Court afforded Mr. Murphy,

the Debtors, and the Chapter 13 Trustee an opportunity to file briefs regarding whether the

recording should be admitted into evidence or reviewed *in camera*.  The Chapter 13 Trustee

filed briefing in opposition to such admission.  Debtors did not file any briefing.  Mr.

---

[32] Third Case, Murphy's Ex. List, Ex. 5, ECF No. 38.

Murphy filed a declaration stating in part that "[a]n *in camera* review of the recorded

statement [would] assist the court in conducting its analysis."[33]

The Court has a considerable amount of discretion when determining whether to

conduct an *in camera* review.  Principles for the exercise of this discretion have been

explained as follows:

> "[A]n in camera review is not appropriate merely because a party requests the
> district court undertake the endeavor." *Jani-King Franchising, Inc. v. Jani-King
> (GB) Ltd.*, No. 3:13-CV-4136-P (BF), 2015 WL 12916409, at *1 (N.D. Tex. Feb. 6,
> 2015) (citing *United States v. Zolin*, 491 U.S. 554, 571 (1989)). "Where there is a
> sufficient evidentiary showing that an issue exists regarding the application of a
> privilege, the court must utilize its own discretion and determine whether *in camera*
> review is appropriate under the circumstances presented." *Id*. (citing *Zolin*, 491 U.S.
> at 571–72) (emphasis added). "However, such a procedure is appropriate only after
> the burdened party has submitted detailed affidavits and other evidence to the extent
> possible." *Id*. (citing *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2014
> WL 884742, at *2 (N.D. Tex. Feb. 27, 2014)). Ultimately, however, "[o]nce [the
> relevant evidentiary] showing is made, the decision whether to engage in *in camera*
> review rests in the sound discretion of the trial court." *Zolin*, 491 U.S. at 572.

*Jordan Kahn Music Co., L.L.C. v. Taglioli*, No. 4:21-CV-045-ALM, 2021 WL 2530842, at

*2 (E.D. Tex. June 21, 2021).  The privilege raised by Mr. Murphy is the attorney-client

privilege between himself and Mr. Lopez.  If a party asserts attorney-client privilege under

Texas law, they must prove that there was: "(a) a confidential communication; (b) made for

the purpose of facilitating the rendition of professional legal services; (c) between or

among the client, lawyer and their representatives; and (d) the privilege has not been

---

[33] *See* Third Case, Murphy's Decl., 3 ¶10, ECF No. 37.

waived." *Hall Phoenix/Inwood v. Hallwood Group Inc. (In re Hallwood Energy, L.P.)*, No. 09-31253-11, 2010 WL 3211688, at *4 (Bankr. N.D. Tex. Aug. 11, 2010); *see also* Tex. R. Evid. 503(b); *see also* Fed. R. Evid. 501. "The burden is on the party asserting the privilege to demonstrate how each document or communication satisfies these elements." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004). To successfully carry this burden, "the proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists." *Id*. Even if the privilege exists, a client may "waive the attorney-client privilege, as to communications that were, in fact, made for the purposes of seeking/providing legal advice, under the so-called 'offensive use doctrine.'" *In re Hallwood Energy, L.P.*, 2010 WL 3211688, at *4. It is not appropriate to conduct an *in camera* review until after the burdened party submits "detailed affidavits and other evidence to the extent possible." *Id*.

The Court finds that an *in camera* review would not be appropriate under the circumstances presented in this case. Mr. Murphy called Mr. Lopez as a witness, and questioned him during the show cause hearing. He did not submit a detailed affidavit or any other evidence before or during the hearing to explain the basis for an *in camera* review.

The declaration submitted by Mr. Murphy after the show cause hearing fails to provide a satisfactory reason for an *in camera* review. In his declaration, Mr. Murphy stated that the recording was a "confidential communication" in which he "render[ed]

professional legal services to the client and included confidential statements made by Francisco Lopez to me, as his attorney, for the purpose of obtaining legal advice and confidential statements and communications by me to Francisco Lopez in the course of giving legal advice."[34]  At best, this is a general statement concerning the attorney-client privilege without sufficient detail to explain why the Court should review an allegedly privileged communication *in camera*.  Despite Mr. Murphy's argument that Mr. Lopez's testimony was false, the Court found Mr. Lopez credible.

Therefore, the Court declines to conduct an *in camera* review of the purported recorded telephone conversation between Mr. Murphy and Mr. Lopez, and sustains the Chapter 13 Trustee and Debtors' counsel's objections concerning the review and the admission of the recording into evidence.

## IV.  Sanctions Imposed

The Court must now determine an appropriate sanction to coerce Mr. Murphy into compliance with the Agreed Order based upon the factors for making such a determination.  Debtors have clearly been and continue to be harmed by Mr. Murphy's noncompliance with the Agreed Order.  They are now in their third Chapter 13 proceeding, and have yet to recover the funds they paid to Mr. Murphy in connection with their prior unsuccessful cases.  The Court has little information regarding the financial resources of Mr. Murphy or

---

[34] *See* Third Case, Murphy's Decl., 3 ¶7, ECF No. 37.

the burden that a financial sanction could possibly impose on him. This factor weighs in favor of restraint. Mr. Murphy willfulness in disregarding this Court's Agreed Order, however, is clear. The Agreed Order was straightforward and unambiguous, yet Mr. Murphy chose to disregard its terms. Mr. Murphy has refused to take responsibility for this willful failure. As to the probable effectiveness of a sanction, the Court will follow the Fifth Circuit's directive to impose the least coercive sanction reasonably calculated to achieve compliance. *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 68 (5th Cir. 1996).

Thus, the Court will exercise patience and restraint in imposing a sanction on Mr. Murphy, with the goal of achieving his compliance with the Agreed Order. Compliance with the Agreed Order is a payment from Mr. Murphy to Debtors in the sum of $8,500.00 by cash, check, certified funds, wire transfer, or similar payment method.

**IT IS THEREFORE ORDERED** that Paul C. (Pat) Murphy IV shall be afforded a *final* opportunity to comply with the Agreed Order by paying the sum of $8,500.00 by cash, check, certified funds, wire transfer, or similar payment method to Debtors, Francisco and Ana Y. Lopez, within seven (7) calendar days from the date of entry of this Memorandum of Decision and Order.

**IT IS FURTHER ORDERED** that if Paul C. (Pat) Murphy IV fails to comply with the Agreed Order by making the required payment to Debtors, Francisco and Ana Y. Lopez, within seven (7) calendar days from the date of entry of this Memorandum of

-22-

Decision and Order, then Paul C. (Pat) Murphy IV shall be further sanctioned and ordered

to pay to the Chapter 13 Trustee, Lloyd Kraus, P. O. Box 734, Tyler, TX 75710, to be

applied to and distributed in accordance with the Debtors' Chapter 13 Plan confirmed in

Case 21-10343, the amount of $125.00 for each day thereafter (the "Memorandum

Monetary Sanctions") continuing until the earlier of either:

> (1) completion of payment by Paul C. (Pat) Murphy IV of the sum of $8,500.00 to Debtors by cash, check, certified funds, wire transfer, or similar payment method, <u>and</u> completion of payment to Chapter 13 Trustee, Lloyd Kraus, for the full amount of Memorandum Monetary Sanctions owed through the date of such payment, if any; or

> (2) the expiration of sixty-seven (67) calendar days from the date of entry of this Memorandum of Decision and Order on Monday, August 15, 2022.

   **IT IS FURTHER ORDERED** that Paul C. (Pat) Murphy IV shall, upon completion

of the sanction payments required herein, evidence such completion by filing with the

Court in Case 21-10343 a certification signed and verified by Paul C. (Pat) Murphy IV,

which certification at minimum:

> (1) certifies to this Court that Paul C. (Pat) Murphy IV has paid the sum of $8,500.00 to Debtors, Francisco and Ana Y. Lopez, by cash, check, certified funds, wire transfer, or similar payment method, <u>and</u> the date such payment was sent;

> (2) certifies to this Court that Paul C. (Pat) Murphy IV has paid the full amount of the Memorandum Monetary Sanctions owed, if any, to the Chapter 13 Trustee, Lloyd Kraus, P. O. Box 734, Tyler, TX 75710, <u>and</u> the date such payment was sent;

> (3) provides to this Court a copy or image of the payment of the sum of $8,500.00 sent to Debtors, Francisco and Ana Y. Lopez; and

(4) provides to this Court a copy or image of the payment to the Chapter 13
Trustee, Lloyd Kraus, of the full amount of the Memorandum Monetary
Sanctions owed, if any.

**IT IS FURTHER ORDERED** that if Paul C. (Pat) Murphy IV fails to comply with

the Agreed Order or this Memorandum of Decision and Order in the time frame set forth

above, then this Court will proceed to enter a second order to show cause why Paul (Pat)

Murphy IV should not be further sanctioned pursuant to this Court's civil contempt powers.

Signed on 06/09/2022

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE